1

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

JAYNE C.,

7
                        Plaintiff,

8           v.

9    COMMISSIONER OF SOCIAL SECURITY,

10
                        Defendant.

Case No. 3:20-cv-06188-TLF

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

11

12         Plaintiff has brought this matter for judicial review of defendant's denial of her

13   application for disability insurance benefits.

14         The parties have consented to have this matter heard by the undersigned

15   Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

16   MJR 13.

17                        I.      <u>ISSUES FOR REVIEW</u>

18         A. Did the ALJ commit harmful error in deciding that plaintiff's 2015 work activity

19   was substantial gainful activity?

20         B.  Did the ALJ properly find that plaintiff could perform her past relevant work at

21   step four of the five-step sequential evaluation?

22         C. Did the ALJ properly find that plaintiff could perform other work at step five?

23         D.  Does new evidence submitted to the Appeals Council undermine the ALJ's

24   findings at step four and five?

25

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 1

E.  Was the ALJ's decision constitutionally defective?

## II.    BACKGROUND

On August 8, 2016, plaintiff filed an application for disability insurance benefits, alleging in that application a disability onset date of April 8, 2012. Administrative Record ("AR") 509. Plaintiff's application was denied upon initial review and upon reconsideration. AR 322, 337. A hearing was held before Administrative Law Judge ("ALJ") Gerald Hill on March 20, 2018. AR 237–89. On July 31, 2018, the ALJ issued a decision finding that plaintiff was not disabled. AR 352–70. On July 24, 2019, the Social Security Appeals Council remanded for a new ALJ hearing and decision on the basis that ALJ Hill did not adequately articulate his reasoning for finding plaintiff could perform her past relevant work. AR 371–75.

Following the Appeals Council remand, a new hearing was held before ALJ David Johnson on January 30, 2020. AR 290–321. This led to a new decision on March 6, 2020, in which ALJ Johnson found that plaintiff was not disabled. AR 43–68. On October 22, 2020, the Appeals Council denied plaintiff's request for review. AR 4–10.

Plaintiff seeks judicial review of the ALJ's March 6, 2020 decision. Dkt. 4.

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

IV.   <u>DISCUSSION</u>

In this case, the ALJ found that plaintiff had the severe, medically determinable impairments of obesity, osteoarthritis, right shoulder abnormalities, status-post right hip replacement, and thyroid abnormalities as of December 31, 2018, her date last insured, in addition to status-post left hip replacement as of October 29, 2018. AR 50.

Based on the limitations stemming from these impairments, the ALJ found that plaintiff could perform a reduced range of sedentary work. AR 51. Relying on vocational expert ("VE") testimony, the ALJ found at step four that plaintiff could perform her past relevant work as a drafter, but also found plaintiff could perform other sedentary, unskilled jobs at step five of the sequential evaluation; therefore, the ALJ determined at both steps four and five that plaintiff was not disabled. AR 59–60.

**A.  Whether the ALJ properly determined that plaintiff performed substantial gainful activity in 2015**

Plaintiff argues that the ALJ erred in finding that, during a four-month period in 2015, her work constituted substantial gainful activity, as opposed to an unsuccessful work attempt. Dkt. 20, pp. 8–9.

An unsuccessful work attempt may be found when a claimant works for a period of six months or less and stopped working due to an impairment. 20 C.F.R. § 416.974(c). Subsection (2) of this regulation informs claimants that "[t]here must be a significant break in the continuity of your work before we will consider that you began a work attempt that later proved unsuccessful," and "[y]ou must have stopped working or reduced your work and earnings below the substantial gainful activity earnings level because of your impairment." 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ found that "while [plaintiff] did not work from 2012 to 2015, most of that break was for the purpose of education so [plaintiff] could enter a more highly skilled position of the type of work she had been doing, and not because she was medically incapable of working." AR 49. This finding is not supported by substantial evidence. As the ALJ noted, plaintiff started attending full-time classes in late 2013, over a year after her alleged onset date of April 8, 2012. *Id.* (citing AR 307). While plaintiff stated that she began taking Computer-Assisted Drafting ("CAD") classes on a part-time basis in 2010, there is no evidence that she maintained a course schedule from 2012 to 2013, or from 2013 to 2015, on a basis that would be comparable to the demands of a full-time job. AR 307.

However, while substantial evidence does not support a finding that plaintiff left her job in 2012 to focus on school, the ALJ properly found that plaintiff also did not leave that job due to her disability.

The ALJ found plaintiff's report that she stopped working in 2012 due to fatigue to be inconsistent with the record. AR 49. While the record showed she complained of fatigue in May 2012, she reported her fatigue as "5/10," which the ALJ reasonably inferred was moderate. *Id.* (citing AR 826). By July 2012, she reported her energy had improved to "7/10," which remained consistent through November 2012, her last report. *Id.* (citing AR 819–24). The ALJ found that plaintiff's lack of treatment—she did not seek treatment until at least a month after the alleged onset date--and reports of improvement regarding fatigue -- within three months of her alleged onset date -- were inconsistent with her assertion that her work ended because of her impairments. AR 49. Given that plaintiff does not challenge the ALJ's adverse credibility determination, she

does not show error with regard to the ALJ's findings regarding her reasons for leaving work. The ALJ's decision that plaintiff took time away from work to obtain more training, and then came back to gainful employment in 2015, is supported by substantial evidence.

Even if the ALJ erred, plaintiff cannot show this was harmful error. Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118–19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

The ALJ's determination that plaintiff's period of work in 2015 was substantial gainful activity did not affect her substantial rights. The ALJ did not rely on this finding as a primary finding upon which to determine whether plaintiff was disabled. The ALJ specifically made alternate findings that did not depend on whether this period of work in 2015 should have been classified as gainful activity, therefore any error at this step would be harmless. See AR 50, 59.

**B. Whether the ALJ properly determined plaintiff could perform her past relevant work**

Plaintiff assigns error to the ALJ's finding that she could perform her past relevant work as a civil drafter. Dkt. 20, p. 9.

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 5

At step four of the sequential evaluation process, the claimant bears the burden of showing they can no longer perform past relevant work. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (citations omitted). An ALJ may rely either on "a properly completed vocational report" and "the claimant's own testimony" to determine whether the claimant can execute the duties of past relevant work as he *actually* performed them, *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001), or the ALJ may consult the Dictionary of Occupational Titles ("DOT") to determine whether the claimant can perform the past work as it is *generally* performed in the national economy. *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (citing Social Security Ruling ("SSR") 82-61, 1982 WL 31387 (1982)).

Here, the ALJ found that plaintiff could perform her past work as a civil drafter as it is generally performed. AR 59. The ALJ based this finding on the testimony of the VE, who indicated that this work is performed at the sedentary exertional level, had a specific vocational preparation ("SVP") level of 7 and, when asked whether plaintiff could perform this work, stated:

> As far as the strict guidelines of the SVP at the time she did [the work], and the training she had, I think the answer is yes. As far as actually being able to obtain work in that area, based on if she was able to do that, could that be done now with the outdated [software] skills? Probably not.

AR 314.

Thus, the VE indicated that plaintiff would likely be unable to obtain employment in this job at the time of the 2020 hearing, but not enough information was available to indicate whether the same would have been true in 2015, when plaintiff ceased working. AR 314.

Plaintiff cites *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir.2007), as support for her claim of error. In *Massachi*, the Ninth Circuit held that an ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]." *Id.* "The ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* at 1153.

In contrast to the present case, in *Massachi*, there was an apparent conflict between the VE testimony and the information set forth in the DOT, but the VE did not volunteer an explanation or attempt to reconcile the apparent conflict, thus triggering the ALJ's duty to inquire. *See Massachi*, 486 F.3d at 1153–54. Here, the ALJ inquired into potential inconsistencies with the DOT, and the VE testified to the extent of those inconsistencies based on professional experience. The ALJ properly resolved the alleged inconsistency in his decision. Thus, the Court finds no error in this case.

In addition, plaintiff's assertion that the ALJ erred, in not making a finding regarding whether the past work could be performed as actually performed, is unsupported. Dkt. 20, p. 10. "We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations above." *Pinto*, 249 F.3d at 845. Here, the vocational expert testified that a person with the hypothetical residual functional capacity could perform the past relevant work of civil drafter as it is generally performed. AR 59 (citing AR 315). The ALJ did not err.

**C.  Whether the ALJ properly found plaintiff could perform other jobs at Step Five**

Plaintiff contends that the ALJ's alternate step five finding is unsupported by the Social Security Administration's Medical Vocational Guidelines. Dkt. 20, p. 10.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). *See Tackett*, 180 F.3d at 1100-1101; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

The Grids may be used if they "*completely and accurately* represent a claimant's limitations." *Tackett*, 180 F.3d at 1101 (emphasis in original).  That is, the claimant "must be able to perform the *full range* of jobs in a given category." *Id.* (emphasis in original).  If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate. *Ostenbrock*, 240 F.3d at 1162; *see also Tackett*, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

Grid rule 201.16 states that an individual between the ages of 50 and 54 limited to sedentary work, with an education of high school graduate or more that provides for direct entry into skilled work, is not disabled. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 201.16. Here, plaintiff was 51 in 2015, when she completed her associate degree in technology. AR 61. Plaintiff testified that she was hired in July 2015 after completing this

education. AR 312. As discussed above, the vocational expert classified this work as "civil drafter," which is skilled work. AR 303–04. Because plaintiff was between the ages of 50 and 54, limited to sedentary work, and completed an associate degree program that provided for direct entry into skilled work, the ALJ applied grid rule 201.16 and found plaintiff not disabled at step 5.

In challenging this finding, plaintiff asserts that the ALJ should have instead applied grid rule 201.12, which provides that individuals closely approaching advanced age, and limited to sedentary unskilled work, are presumptively disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.12. However, the ALJ's RFC determination did not limit plaintiff to unskilled work. Plaintiff's argument relies on a misreading of grid rule 201.16:

> Grid rule 201.16 requires "High school graduate or more—provides for direct entry into skilled work." 20 CFR Pt. 404, Subpt. P, Rule 20[1].16. Nothing in the record indicates that Plaintiff obtained skills in high school that provided for direct entry into skilled work.

Dkt. 28, p. 9. This argument ignores the "or more" language in the rule. Because plaintiff's associate's degree was "more" than a high school degree and allowed her direct entry into skilled work, she cannot show that grid rule 201.12 should have applied. The ALJ did not err in applying grid rule 201.16 to conclude that plaintiff was not disabled.

**D.  Whether new evidence submitted to the Appeals Council undermines the ALJ's determination**

Plaintiff asserts that a 2020 opinion from psychiatric consultative examiner Terilee Wingate, Ph.D., was evidence that undermined the ALJ's decision. Dkt. 20, p. 11.

Pursuant to the Commissioner's regulations, the Appeals Council shall consider "new and material evidence" submitted to it, but only where such evidence "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b); *see also* 20 C.F.R. 416.1476(b) and 20 C.F.R. 416.1479.  Here, Dr. Wingate rendered her opinion on June 29, 2020, almost 18 months after plaintiff's date last insured of December 31, 2018. AR 48, 95.

The Appeals Council held that this opinion did not relate to the relevant period. AR 5. Indeed, during the evaluation, plaintiff stated that her more significant depressive symptoms started only "a few months ago." AR 96. Plaintiff cites to other portions of the clinical interview to support her assertion that her mental health issues started earlier, but all of this information was already in the record before the ALJ and contained in an earlier psychological evaluation. *See* AR 94–97, 843–47. The ALJ relied upon this earlier evaluation to determine that plaintiff had no severe psychological impairments, and plaintiff has not shown that her more recent evaluation undermines that determination or the ALJ's decision at large. The Appeals Council did not err in rejecting this evidence.

**E.  Whether the Court Should Reverse and Remand This Case due to Constitutional Violations**

Plaintiff argues that the statutory restriction on the President's removing the Social Security Administration Commissioner was unconstitutional; plaintiff relies on *Collins v. Yellen,* 141 S. Ct. 1761 (2021), *Seila Law LLC v. Consumer Fin. Prot. Bureau,* 140 S. Ct. 2183 (2020), and *Lucia v. SEC,* 138 S. Ct. 2044 (2018) and contends the Court is required to remand the case for a de novo agency hearing, because the ALJ

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS - 10

was not acting pursuant to properly delegated authority, therefore the ALJ did not have legal authority to review this case and make a decision.

If a separation of powers violation occurred as a result of the 42 U.S.C. § 902(a)(3) statutory language, then plaintiff has a right, shared by everyone in this country, to bring a challenge under the separation of powers doctrine only if she has Article III standing to invoke the Court's jurisdiction under *Collins v. Yellen,* 141 S. Ct. 1761 (2021), and *Siela Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). To have standing, plaintiff must show they are an aggrieved party—they must establish there is a nexus between the Constitutional violation and an unlawful action of the ALJ in this specific case, and that they have a compensable injury to be redressed. *Collins,* 141 S. Ct. at 1787, 1788, n.23, and n.24; *see also, TransUnion LLC v. Ramirez,* 141 S.Ct. 2190, 2205-2206 (2021) (even if plaintiff can show a violation of federal law, in order to invoke the federal court's jurisdiction and Article III standing, plaintiff must show they have suffered concrete "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts"); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37-38 (1976) (clarifying that Article III standing is focused on the plaintiff, and whether, assuming the justiciability of the claim, plaintiff has alleged a personal stake in the outcome to justify the federal court's exercise of jurisdiction; the standing inquiry is not focused on the issues plaintiff seeks to adjudicate).

Plaintiff argues that all actions taken by former Commissioner Saul – including all actions taken by ALJs who served during Saul's tenure – would be void because of the

allegedly unconstitutional removal provision. The Court in *Collins* rejected this argument. *Collins,* at 1779.

In *Collins*, the plaintiffs showed they had property rights that were injured, and the injury was traceable to the FHFA's actions (actions pursuant to a decision made during the Director's tenure and implemented for many years thereafter), and a decision in plaintiff's favor could lead to an award of relief sought by plaintiff; by contrast, in this case, plaintiff cannot meet any of the three-part criteria to establish Article III standing. Under the Court's holding*,* in order to establish Article III standing, plaintiff is required to show that she suffered compensable harm as a result of the Constitutional separation of powers violation. *Collins v. Yellen,* 141 S. Ct. at 1787, 1788 n.23, and n.24; *see Decker Coal Company v. Pehringer,* 8 F.4th 1123, 1136-1138 (9th Cir. 2021) (plaintiff brought a separation of powers challenge to the Department of Labor ALJ's authority under *Collins v. Yellen* and *Seila Law* – but failed to show any indication that the ALJ took unlawful action, nor did plaintiff make any showing of a nexus between the allegedly unconstitutional removal provisions and plaintiff's specific case, nor any compensable harm; the Court declined to remand for a new hearing).

Here, plaintiff has not made any showing of how this alleged constitutional violation caused any compensable harm in this specific situation. *Collins,* at 1779 ("plaintiff must show that it has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'" (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992)). Plaintiff is not required to show that the ALJ would have decided the appeal differently and awarded benefits—but for the statutory issue identified as a potential separation of powers violation by the

Office of Legal Counsel. *Constitutionality of the Commissioner of Social Security's Tenure Protection,* 45 Op. O.L.C. __ (July 8, 2021) https://www.justice.gov/olc/file/1410736/download. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020) (in order to show traceability, the litigant is not required to show the U.S. Government's conduct would have been different if the Government had acted with proper authority under the Constitution).

Yet, plaintiff must show compensable harm. *See Decker Coal Company v. Pehringer,* 8 F.4th 1123, 1137 (9th Cir. 2021) ("Here, the ALJ lawfully exercised power that he possessed by virtue of his appointment, which the Secretary ratified before the ALJ adjudicated the claim. Absent a showing of harm, we refuse to unwind the decisions below.") In the reply brief, plaintiff argues "[Commissioner] Saul's actions, under constitutional authority or not, have caused specific harm by undermining, politicizing and reducing due process protections to Plaintiff's claim." Dkt. 28 at 2. This argument that there is a possibility § 902(a)(3) harmed plaintiff fails to recognize the significant difference between the agency action in *Collins* and the SSA action here.

In *Collins*, the Directors of the FHFA adopted an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Id.* at 1774. The plaintiffs in *Collins* thus had an identifiable basis to contend that but for the unconstitutional removal provision, the President may have removed and appointed a

different Director who would have disapproved of the adoption (or implementation) of the Third Amendment. *See id.* at 1789.

In contrast, there is nothing showing the Commissioner or the SSA implemented new and relevant agency action that may have turned upon the President's inability to remove the Commissioner. Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why § 902(a)(3) removal clause possibly harmed her.

There is also nothing showing former President Trump would have removed Commissioner Saul and appointed a new Commissioner who would have administered plaintiff's claims differently. Rather, former President Trump appointed Commissioner Saul, and was still in office on March 6, 2020, when the ALJ's decision that plaintiff challenges was issued. *See* AR 43–68. This remained the case on October 22, 2020, when the Appeals Council issued its decision denying plaintiff's request for review. AR 4–10.

Thus, plaintiff's argument that the "the Appeals Council had no authority to exhaust administrative remedies in the case at bar" is unsupported. Dkt. 28, p. 6. Accordingly, because there is no evidence that the former President sought to remove Commissioner Saul, there is no connection between § 902(a)(3)'s removal clause and possible harm the removal clause might have caused plaintiff. *Cf. Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 14

Even assuming §902(a)(3)'s removal clause prevented former President Trump from removing Commissioner Saul and confirming a different Commissioner, there is no possibility § 902(a)(3) harmed plaintiff, because the final decision of the Commissioner that is before this Court for review is the ALJ's decision. The ALJ's decision in this case is based upon an uncontested factual record and the application of governing law, including unchallenged regulations. The ALJ's decision and the administrative record are both subject to review by this Court.

The specific Commissioner who heads the SSA or any directive the Commissioner gave regarding plaintiff's case would not alter the viability of the ALJ's decision herein. This is because the Court has reviewed the record and the ALJ's decision at issue and concludes that the ALJ did not err, and that the case should be affirmed for these reasons. Had the Court found otherwise and determined that the ALJ's decision was not supported by substantial evidence or free of legal error, the Court would have reversed the Commissioner's final decision. Hence, the Court reaches its decision to reverse or affirm the Commissioner's final decision notwithstanding the existence of § 902(a)(3)'s removal clause, who the Commissioner was at the time the decision became final, or what directives the Commissioner may have given the ALJ. The Court thus concludes that plaintiff has not established § 902(a)(3)'s removal clause harmed plaintiff in this case.

Plaintiff also mentions, in her reply brief, that the Commissioner's actions reduced "due process protections." Dkt. 28, p. 2. *Seila Law* and *Collins* addressed infirm removal provisions that the Court found violate separation of powers -- not due process; these cases thus provide no basis to support a due process claim. Additionally, a

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 15

conclusory allegation that due process was denied is not sufficient to raise a colorable constitutional claim. *See e.g. Hoye v. Sullivan,* 985 F.2d 990, 992 (9th Cir. 1992).

Because plaintiff has not shown any compensable harm fairly traceable to the actions of former Commissioner Saul, under *Collins v. Yellen,* 141 S. Ct. 1761,1788 (2021), the plaintiff's situation is distinguishable from the plaintiff's claims in *Collins*; plaintiff has failed to establish standing and the Court need not address the plaintiff's or defendant's additional arguments.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

Dated this 27th day of January, 2022.

Theresa L. Fricke
United States Magistrate Judge